# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**VERONICA COTTON**
        **Plaintiff,**

    **v.**                           **Case No. 21-C-658**

**KILOLO KIJAKAZI,**
**Acting Commissioner of the Social Security Administration**
        **Defendant.**

---

## DECISION AND ORDER

Plaintiff Veronica Cotton challenges the decision of an Administrative Law Judge ("ALJ") denying her application for social security disability benefits. For the reasons that follow, I affirm the ALJ's decision.

## I. LEGAL STANDARDS

### A. Disability

In order to qualify for benefits, a claimant must be under a "disability" as defined in the Social Security Act: "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a sequential five-part test for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). Step one asks whether the claimant is engaging in substantial gainful activity. If not, the ALJ moves to step two, which addresses whether the claimant has a severe, medically determinable impairment or impairments. If yes, then the question at step three is whether that impairment appears on

a list the agency keeps, pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1, of presumptively disabling conditions. If the claimant's impairment appears on the list, then benefits are due. If not, the ALJ pauses to determine the claimant's residual functional capacity ("RFC"), which is the most physical and mental work the claimant can do on a sustained basis despite her limitations. At step four, the ALJ determines whether, given her RFC, the claimant is still capable of performing her past relevant work. If yes, then benefits must be denied. If no, the ALJ proceeds to the final step and determines, usually with the help of a vocational expert ("VE"), whether there is any work in the national economy the claimant can perform. If yes, then the ALJ will deny the application; if no, the claimant prevails. Mandrell v. Kijakazi, 25 F.4th 514, 516 (7th Cir. 2022).

**B.    Judicial Review**

The court will affirm the denial of benefits if the ALJ followed applicable law and supported his conclusions with "substantial evidence." Grotts v. Kijakazi, 27 F.4th 1273, 1276 (7th Cir. 2022). Substantial evidence is not a high threshold: it means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. A reviewing court will not re-weigh or resolve conflicts in the evidence, decide questions of credibility, or otherwise substitute its judgment for that of the ALJ. Prill v. Kijakazi, 23 F.4th 738, 746 (7th Cir. 2022); see also Karr v. Saul, 989 F.3d 508, 513 (7th Cir. 2021) ("Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence."). Finally, while the ALJ must provide a logical bridge between the evidence and his conclusions, he need not specifically address every piece of evidence in the record. Wilder v. Kijakazi, 22 F.4th 644, 651 (7th Cir. 2022).

2

## II. FACTS AND BACKGROUND

Plaintiff applied for benefits in October 2012, then age 38, initially alleging a disability onset date of January 1, 2009. (Tr. at 205, 212.) She later amended the onset date to April 5, 2012 (Tr. at 45-46, 305), when she last worked, as a housekeeper for a hotel chain (Tr. at 240-41, 793).

Plaintiff alleged that she could no longer sustain full-time work due to back pain, neck pain, and headaches related to cervical and lumbar degenerative disc disease and a Chiari malformation. (Tr. at 240.) A September 2012 lumbar MRI revealed mild degenerative changes and an annular disc tear at L5-S1 (Tr. at 385), and a September 2012 cervical MRI revealed Chiari malformation, mild degenerative changes, and broad-based shallow disc protrusion at C4-C5 (Tr. at 387). Chiari malformation is a condition in which brain tissue extends into the spinal canal. It occurs when part of the skull is misshapen or smaller than is typical, pressing on the brain and forcing it downward. Headaches are the classic symptom of Chiari malformation; the condition may also cause neck pain and unsteadiness.[1] Plaintiff had also been diagnosed with carpal tunnel syndrome, for which she underwent release surgery in April 2013. (Tr. at 1047-48.)

In function reports accompanying her application, plaintiff indicated that she could not stand or sit for long periods of time (Tr. at 250, 258), lift more than 10 pounds, or walk more than two blocks (Tr. at 255). She further reported that her children had to help with the cooking and housework. (Tr. at 251-52.)

Plaintiff treated primarily with Trinh Truong, M.D., a physical medicine and rehabilitation

---

[1]https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010 (last visited May 4, 2022).

3

specialist, and his records documented the use of medications, injections, and radio-frequency ablation treatment for her pain (Tr. at 449-58, 486-52, 1131-50, 1151-1320, 1382-1467, 1468-97), as well as referrals for physical therapy (Tr. at 1026). Dr. Truong also referred plaintiff to a neurologist, who prescribed medication for her headaches. (Tr. at 553-58.) A referral for possible surgical decompression of the Chiari malformation fizzled because the specialist did not accept plaintiff's insurance. (Tr. at 556, 808.) Dr. Truong produced a number of opinions regarding plaintiff's condition, generally indicating that she lacked the capacity for full-time work. (Tr. at 479-82, 593, 942, 1078-82, 1084-88.)

The agency denied plaintiff's application initially based on the review of Pat Chan, M.D., who determined that plaintiff could perform full-time sedentary work with no other limitations. (Tr. at 107, 113-14, 141.) Plaintiff requested reconsideration (Tr. at 149), but the agency maintained the denial based on the review of Ronald Shaw, M.D., who found plaintiff capable of light work with frequent (not constant) reaching, handling, and fingering. (Tr. at 123, 129-30, 150.)

Plaintiff then requested a hearing before an ALJ. (Tr. at 160.) The ALJ held a hearing on August 5, 2015 (Tr. at 38-107), and on September 24, 2015, issued an unfavorable decision, concluding that plaintiff retained the RFC for light work with frequent reaching, handling, and fingering, which enabled her to perform her past job as a cleaner. (Tr. at 19-31.)

After the Appeals Council denied review (Tr. at 1), plaintiff filed an action for judicial review in district court (Tr. at 757). On February 5, 2020, the court reversed the ALJ's decision and remanded under 42 U.S.C. § 405(g), sentence four. The court's minute order states:

> The court explained that the ALJ never discussed whether he had factored the length, nature and frequency of the relationship between the plaintiff and Dr. Truong into the weight given Dr. Truong's opinion. The court indicated that it

4

would remand for consideration and findings on assigning little weight to Dr. Truong's opinion as the treating physician.

The court then addressed the other issues for the ALJ to consider on remand. While not making a determination as to the plaintiff's credibility, the court pointed out that the ALJ should not have relied solely on the objective medical evidence as the best indicator of pain. The court stated that the ALJ needed to revisit that portion of the decision, along with the record evidence of variable functioning, to make sure that he built a logical bridge to the conclusion regarding the RFC assessment. Finally, the court stated that the ALJ needed to explain the reasons he gave little weight to Dr. Chan's opinion but gave significant weight to Dr. Shah's [sic] opinion, when the two doctors reached the same conclusions on credibility and relied on much of the same evidence.

(Tr. at 766-67.)

On June 1, 2020, the Appeals Council remanded the case to an ALJ for further proceedings consistent with the court's order. The Council directed the ALJ to offer plaintiff a hearing, take any further action needed to complete the record, and issue a new decision. (Tr. at 772.)

On December 1, 2020, plaintiff appeared for a hearing on remand. (Tr. at 686.) Plaintiff testified that she stood 5' tall and weighed 204 pounds. (Tr. at 696.) She lived with her three children, then ages 20, 19, and 18. (Tr. at 697.) She had a driver's license but rarely drove due to difficulty turning her neck. She was a high school graduate with additional course work as a pharmacy tech. (Tr. at 698.) She worked as a housekeeper at a hotel from 2005 to 2012, cleaning rooms. (Tr. at 698-99.)

Plaintiff testified that she had been diagnosed with a Chiari malformation. (Tr. at 699.) It was recommended she have surgery to relieve the symptoms, but the surgeon she was referred to did not take her insurance. (Tr. at 700.) She treated with Dr. Truong, who provided injections, medication, and radio-frequency ablations. (Tr. at 701.) She indicated the treatments worked to an extent, providing relief for a time before wearing off. Relief from the

5

injections lasted about a week.  (Tr. at 702.)  Plaintiff testified that her neck condition caused headaches, which occurred weekly and usually lasted a day or two, treated with medications. (Tr. at 704.)  She also experienced low back pain, also treated by Dr. Truong.  (Tr. at 706.)

Plaintiff testified that she could stand for about 15 minutes, sit for ½ hour, walk two blocks, and lift five pounds.  (Tr. at 707.)  She reported no difficulties with self-care, but her daughter prepared most meals and did the housework.  (Tr. at 709-10.)  When shopping, she used a motorized cart.  She reported no hobbies or outside activities.  (Tr. at 710.)  She testified that out of 24 hours she was laying down for 22.  (Tr. at 718.)  She further indicated that her pain would cause her to miss more than four of days of work month and interfered with her attention and concentration.  (Tr. at 719.)

The ALJ then took testimony from a VE, who classified plaintiff's past work as a housekeeper as light and unskilled.  (Tr. at 722.)  The ALJ then asked a hypothetical question, assuming a person of plaintiff's age, education, and experience, limited to sedentary work with frequent reaching, handling and fingering, occasional climbing, no work at unprotected heights, and occasional work with moving mechanical parts and exposure to vibration.  (Tr. at 722.) The VE testified that such a person could not perform plaintiff's past work but could do other jobs such as information clerk, polisher, and order clerk.  (Tr. at 722-23.)  Employers of these types of unskilled jobs would permit 5% time off task and two absences per month.  (Tr. at 723-24.)  If the handling and fingering, or the reaching, were reduced to occasional, the only available job would be surveillance-system monitor.  (Tr. at 723.)  Adding a limitation of occasional neck movement or holding the head in a static position would eliminate the identified jobs.  (Tr. at 727-28.)

On February 3, 2021, the ALJ issued an unfavorable decision.  (Tr. at 662.)  At the

6

outset of his decision, the ALJ acknowledged the directives from the Appeals Council, including that he re-evaluate the record evidence (including variable functioning) to be sure that a logical bridge was built to the RFC assessment. (Tr. at 665.)

Following the five-step process, the ALJ determined that plaintiff had not engaged in substantial gainful activity since April 5, 2012, the amended alleged onset date; that she had the severe impairments of obesity, Chiari malformation, degenerative disc disease, migraines, and carpal tunnel syndrome (Tr. at 668); that none of these impairments met or equaled a Listing (Tr. at 668-69); that plaintiff retained the RFC to perform sedentary work, with frequent reaching, handling and fingering, occasional climbing and postural movements, avoidance of heights, and occasional work with moving mechanical parts and vibration (Tr. at 669-70); that given this RFC, plaintiff could not perform her past relevant work (Tr. at 675); but that she could perform other jobs, as identified by the VE, including information clerk, polisher, and order clerk (Tr. at 676). The ALJ accordingly found plaintiff not disabled and denied her application. (Tr. at 677.)

In determining RFC, the ALJ considered the medical evidence, plaintiff's alleged symptoms, and the opinion evidence. (Tr. at 670.) Plaintiff alleged disability due to back pain, neck pain, shoulder pain, chest pain, headaches, carpal tunnel syndrome, degenerative disc disease of the cervical and lumbar spine, and Chiari malformation. She asserted that these impairments affected her ability to lift, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, use her hands, and handle stress. She further asserted a compromised ability to prepare meals, do housework, shop, drive, engage in social activities, and sleep. At the hearing, she testified that she could stand for 15 minutes, sit for ½ hour, walk two blocks, and lift five pounds. (Tr. at 670.)

7

The medical evidence documented Chiari malformation, migraines, and degenerative disc disease, with plaintiff reporting pain in her neck, lower back, and arms. She was seen for back pain, neck pain, and headaches throughout the relevant period. (Tr. at 670.) July 2012 x-rays of the cervical spine showed minimal degenerative changes; a September 2012 MRI of the cervical spine revealed Chiari malformation, mild degenerative changes, and broad-based central shallow disc protrusion at C4-C5; a September 2012 MRI of the lumbar spine showed mild degenerative changes; and a February 2015 x-ray of the cervical spine showed mild degenerative disc disease. (Tr. at 670-71.) On examinations, plaintiff was observed with limited range of lumbar motion, abnormal posture, muscle spasms, pain with motion, a right sided limp, discomfort while sitting and standing, and tenderness to the cervical and lumbar spine. She further reported frequent migraine headaches, with phonophotophobia, occasional balance issues, and difficulty with memory and concentration. Treatment included injections, radio-frequency nerve ablation procedures, physical therapy, and medications. She also reported a history of trying occupational therapy, acupuncture, and chiropractic care with no relief. Regarding her carpal tunnel syndrome, plaintiff reported hand pain, numbness, and tingling, undergoing right carpal tunnel release in April 2013, with subsequent treatment including use of a wrist brace, home exercises, and medication. Finally, the ALJ noted that plaintiff was obese, with a BMI ("body mass index") over 40. (Tr. at 671.)

The ALJ concluded that due to plaintiff's "severe physical impairments and variable functioning noted throughout the record," she was limited to sedentary work with frequent reaching and occasional climbing and postural movements. (Tr. at 671-72.) The ALJ further concluded that she could never work at unprotected heights and could work with moving mechanical parts and in vibration only occasionally. (Tr. at 672.)

8

The ALJ determined that the record failed to fully substantiate plaintiff's allegations of disabling symptoms. Regarding plaintiff's Chiari malformation, migraines, obesity, and degenerative disc disease, plaintiff had retained relatively good physical functioning despite these conditions. While diagnostic imaging revealed abnormalities, on examination she was observed with normal sensation, normal reflexes, normal cervical range of motion, normal muscle tone, negative straight leg raise, normal strength, and normal gait. Neurological examinations were overall unremarkable. Additionally, the record showed that plaintiff's symptoms improved with treatment, with plaintiff reporting 90% relief of her low back pain with ablations, 90% relief of her neck pain with injections, and "marked improvement" in February 2017 with treatments. While the improvement was not always long lasting, she continued to manage and/or improve her symptoms with her current treatments. Finally, while she was clinically obese, there was no evidence of any specific or identifiable impact on her functioning. (Tr. at 672.)

Plaintiff reported use of a cane, but the ALJ did not include a limitation for use of an assistive device for ambulation or walking. In August 2013, Dr. Truong prescribed a single point cane, but in his subsequent reports he opined that plaintiff did not require a cane or other assistive device. Further, there was little record evidence to support the required use of a cane, with examinations revealing normal gait. Finally, the ALJ accommodated any walking limitation by reducing plaintiff to a range of sedentary work. (Tr. at 672.)

Regarding plaintiff's carpal tunnel syndrome, May 2014 x-rays were mostly unremarkable, June 2014 electro-diagnostic testing was completely normal, and during exams plaintiff displayed 5/5 strength and full range of motion. The record also supported that her symptoms improved with treatment. (Tr. at 672.)

9

"Thus, the claimant's overall good objective physical and neurological examination findings during evaluations and improvement of symptoms with treatment suggests the claimant is not as limited as alleged and remains capable of performing work within the restrictions set forth herein." (Tr. at 673.)

The ALJ further found that the record documented plaintiff having better functioning than her allegations of disabling symptoms would indicate. Plaintiff was able to overall tend to her own personal care needs and activities of daily living, such as caring for her children (with help from her older daughter), preparing simple meals (although her older daughter prepared most meals), doing some housework (dishes and ironing), taking public transportation, shopping (using a motorized cart at times), driving (at times), reading, exercising, managing her money, attending church sometimes, handling her own medical care, and attending medical appointments. (Tr. at 673.)

As for the opinion evidence, the ALJ gave some weight to Dr. Shaw's report, agreeing that some level of reaching limitation was supported by the cervical spine findings and plaintiff's reported pain. However, the ALJ found that the overall record, including the later-acquired evidence and plaintiff's hearing testimony, supported a limitation to sedentary rather than light work. (Tr. at 673.) The ALJ also gave some weight to Dr. Chan's opinion, agreeing with the limitation to sedentary work. However, he found further postural, manipulative, and environmental limitations supported by the record. (Tr. at 673.)

Finally, the ALJ considered the various opinions from Dr. Truong, who had been treating plaintiff since 2012, seeing her every month or two. In August 2013, Dr. Truong wrote a prescription for a single point cane (Tr. at 942), but on several occasions thereafter he opined that she did not need an assistive device. In June 2014, Dr. Truong noted that plaintiff could

10

not type at work. (Tr. at 673, citing Tr. at 503.) In May 2015, he prepared a report limiting plaintiff to standing/walking less than two hours per day, sitting about two hours per day, rarely lifting up to 10 pounds, using her hands and fingers 90% of the time but using her arms for reaching just 5% of the workday, off task more than 25% of the day, and missing more than four days per month. (Tr. at 673-74, citing Tr. at 479-82.) In August 2015, Dr. Truong submitted a letter clarifying that the 5% reaching limitation related to plaintiff's cervical condition, as reaching would cause hyperextension of her neck. He further noted that while he previously limited plaintiff's typing, an EMG of both wrists in June 2014 showed no evidence of carpal tunnel, so he removed that restriction. (Tr. at 674, citing Tr. at 593.) In March 2019, Dr. Truong completed another form report, limiting plaintiff to the sedentary level, with occasional manipulative activities (reaching, handling, fingering), turning of the head, and climbing/postural movements. He further opined that she would be absent more than three times per month and could participate in work/work readiness activities five hours per day. (Tr. at 674, citing Tr. at 1078-82.) He completed a similar report in September 2019, limiting plaintiff to lifting no more than 10 pounds, standing/walking no more than two hours per workday, and sitting no more than two hours per workday; he further opined that plaintiff would have no significant limitations with reaching, handling or fingering,[2] did not require an assistive device, would be absent more than three times per month, and could participate in work/work readiness activities five hours per day. (Tr. at 674, citing Tr. at 1084-88.)

_____

[2]In this report, Dr. Truong checked the box for "no" in response to the question whether plaintiff had "significant limitations with reaching, handling, or fingering." (Tr. at 1086.) However, he went on to check "occasionally" regarding the percentage of time she could handle, finger, or reach (Tr. at 1086), just as he had done in the March 2019 report (Tr. at 1080). In the March 2019 report, he left blank the "yes" and "no" check-boxes in response to whether plaintiff had significant limitations with reaching, handling, or fingering. (Tr. at 1080.)

11

The ALJ assigned little weight to these opinions. While Dr. Truong was an acceptable medical source who had a treating relationship with plaintiff, his opinions were extreme when compared to the overall evidence, including his exam findings and plaintiff's own reports of improvement. For example, plaintiff was observed in examinations with normal sensation, normal reflexes, normal cervical range of motion, normal muscle tone, negative straight leg raise, normal strength, and normal gait. The ALJ also found significant that the doctor imposed a typing restriction but then removed it after a June 2014 EMG was normal, which suggested he was relying on subjective rather than objective evidence to reach his initial conclusion. He then added back in fingering restrictions years later with no explanation of the evidence used to support this limitation. Likewise, he prescribed a cane, then noted in subsequent reports that she did not need an assistive device, which suggested improvement. (Tr. at 674.)

The ALJ concluded:

In sum, the above residual functional capacity assessment is supported by the overall record and opinions of Drs. Chan and Shaw, in part. The undersigned's review of the record fails to fully substantiate the claimant's allegations of disabling symptoms. Instead, she remains capable of performing a range of sedentary level work for the reasons explained herein.

(Tr. at 675.)

### III. DISCUSSION

Plaintiff argues that the ALJ overlooked evidence of her variable functioning; failed to provide the required narrative explanation for the RFC finding; included no limitations related to her Chiari malformation, headaches, and cervical spine impairment; erroneously concluded that treatment restored her ability to work; and failed to provide good reasons for discounting Dr. Truong's opinions. I address each argument in turn.

12

## A.    Variable Functioning

The district court's minute order remanding the case directed the ALJ to revisit the credibility determination, "along with the record evidence of variable functioning, to make sure that he built a logical bridge to the conclusion regarding the RFC assessment."  (Tr. at 767.)  Plaintiff argues that the ALJ failed to follow the court's directive on remand, merely offering the conclusion that, due to her "severe physical impairments and variable functioning noted throughout the record," she was limited to a range of sedentary work.  (Tr. at 671.)  Plaintiff faults the ALJ for failing to include a discussion of her variable functioning, which is substantiated by Dr. Truong's treatment notes documenting "fluctuating" and "intermittent" pain. (Pl.'s Br. at 20.)  Plaintiff further contends that, while Dr. Truong at times noted improvement, he was always referring to a specific part of her body, not her overall condition.  (Pl.'s Br. at 21.) Finally, plaintiff notes that pain can limit standing, lifting, and sitting for prolonged periods, or lead to work absences.  (Pl.'s Br. at 21-22.)  She cites her testimony at the second hearing that she would miss more than four days of work per month, an allegation the ALJ failed to address. (Pl.'s Br. at 22.)  The ALJ did reference Dr. Truong's opinions regarding absences, but plaintiff contends that he provided no explanation as to why he rejected those estimates.  (Pl.'s Br. at 22, citing Farrell v. Astrue, 692 F.3d 767, 773 (7th Cir. 2012) ("Farrell's RFC should not have been measured exclusively by her best days; when a patient like Farrell is only unpredictably able to function in a normal work environment, the resulting intermittent attendance normally precludes the possibility of holding down a steady job.").)

As discussed above, in making his RFC finding, the ALJ considered plaintiff's alleged symptoms based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p.  (Tr. at 670.) SSR 16-3p sets forth a two-step process for symptom evaluation.  First, the ALJ must

13

determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 2016 SSR LEXIS 4, at *5. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. Id. at *9. If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities, medications used, and treatment received for relief of the pain or other symptoms. Id. at *18-19. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Id. at *26. So long as the ALJ gives specific reasons supported by the record, the court will overturn his credibility determination only if it is "patently wrong." Deborah M. v. Saul, 994 F.3d 785, 788 (7th Cir. 2021).

The ALJ followed the two-step process here, finding that while plaintiff's impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 672.) In making this finding, the ALJ relied on the objective medical evidence, the relatively normal exam findings, plaintiff's improvement with treatment, and her reported activities. (Tr. at 672-73.) Importantly, the ALJ did not entirely discount plaintiff's testimony; indeed, he relied in part on that testimony in imposing restrictions beyond those suggested by the agency consultants. (Tr. at 673.)

As the Commissioner notes, the court did not in the previous remand order make any

14

finding as to plaintiff's credibility; nor did the court suggest the ALJ was required to include any specific limitations related to variable functioning. (Def.'s Br. at 9-10.) At the outset of his decision, the ALJ acknowledged the directive to consider plaintiff's variable functioning on remand (Tr. at 665), and he later concluded that due to her physical impairments and variable functioning plaintiff was limited to a reduced range of sedentary work (Tr. at 671). Nothing in the remand order required more. See Schrank v. Saul, 843 Fed. Appx. 786, 790 (7th Cir. 2021) ("The Appeals Council's remand order faulted the previous decisions for altogether failing to consider that evidence and directed the ALJ on remand to 'evaluate' it. As described above, the ALJ did just that.").

As the Commissioner further notes, in the body of his decision the ALJ acknowledged that plaintiff experienced flare-ups (Tr. at 671) and that her pain levels went up and down (Tr. at 672). See Roche v. Kijakazi, No. 20-CV-556, 2021 U.S. Dist. LEXIS 133534, at *16 (E.D. Wis. July 19, 2021) ("Given [the ALJ's discussion of flare-ups], no basis exists for Roche's arguments that the ALJ erred by overlooking evidence of Roche's variable functioning."). True, the ALJ did not specifically discuss plaintiff's testimony regarding anticipated absences, but "ALJs are not required to discuss each of the claimant's individual statements." Leal v. Saul, No. 19-CV-1356-SCD, 2020 U.S. Dist. LEXIS 140223, at *11 (E.D. Wis. Aug. 6, 2020) (citing Shideler v. Astrue, 688 F.3d 306, 312 (7th Cir. 2012)). The ALJ did consider Dr. Truong's opinions regarding absences, as plaintiff acknowledges. Thus, this is not a case in which the ALJ ignored an entire line of evidence. See Jones v. Astrue, 623 F.3d 1155, 1162 (7th Cir. 2010) ("The ALJ need not, however, discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability."). And as discussed more fully below, the ALJ provided a number of reasons for discounting Dr.

15

Truong's opinions that plaintiff could not sustain full-time employment. The ALJ concluded that, while her symptoms fluctuated, plaintiff had been able to manage her symptoms sufficiently to sustain the reduced ranged of sedentary work contemplated by the RFC. (See Tr. at 672.)

Finally, plaintiff provides no record support for her claim that Dr. Truong's notations of improvement always referred to a specific part of her body, rather than her overall condition. In any event, nothing in the regulations says that only fully effective treatment may be considered in evaluating a claimant's symptoms. See 20 C.F.R. § 404.1529(c)(3). Here, the ALJ accepted that plaintiff's remaining symptoms significantly affected her ability to walk, stand, and lift, limiting her to a reduced range of sedentary work.

## B. Narrative Explanation of the RFC

Plaintiff contends that the ALJ's RFC assessment failed to provide the narrative explanation required by SSR 96-8p. (Pl.'s Br. 22.) However, the entirety of her argument consists of a block quote from SSR 96-8p. (Pl.'s Br. at 23.) "To present an argument on appeal, a party must develop its position by providing citation to the relevant portions of the record and supporting authority." Long v. Teachers' Ret. Sys. of Ill., 585 F.3d 344, 349 (7th Cir. 2009). Unsupported and underdeveloped arguments, such as this one, are waived. Id.; see also Vang v. Saul, 805 Fed. Appx. 398, 403 (7th Cir. 2020) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.") (internal quote marks omitted).

In any event, the ALJ provided a sufficient explanation. First, the ALJ adopted a highly restrictive RFC, limiting plaintiff to sedentary work (lifting no more than 10 pounds, sitting most of the day); with frequent (not constant) reaching, handling, and fingering; never climbing

16

ladders, ropes, or scaffolds, and occasionally climbing ramps or stairs; occasionally stooping, kneeling, crouching, and crawling; never working at unprotected heights, working with moving mechanical parts occasionally, and working in vibration occasionally. (Tr. at 671-72.) As SSR 96-9p notes: "An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." 1996 SSR LEXIS 6, at *1.

Second, the ALJ considered the factors set forth in SSR 96-8p, 1996 SSR LEXIS 5, at *13-14, including plaintiff's medical history (Tr. at 670-71); the objective medical scans and tests (Tr. at 670-71); the nature and effectiveness of the treatment she received (Tr. at 671-73); her daily activities (Tr. at 673); the medical and lay opinion evidence (Tr. at 673-75); and plaintiff's subjective statements regarding her symptoms (Tr. at 672-73). The ALJ accepted that plaintiff's impairments caused serious limitations, but in finding that she retained the capacity for a reduced range of sedentary work he cited the MRIs and x-rays showing mild degenerative changes (Tr. at 670, citing Tr. at 385-89, 1130); examination findings of normal sensation, normal cervical range of motion, normal muscle tone, negative straight leg raise, normal strength, and normal gait (Tr. at 672, citing Tr. at 455-58, 1286, 1290, 1298, 1307, 1318, 1457-58, 1465, 1477, 1488, 1494); and unremarkable neurological examinations (Tr. at 672, citing Tr. at 556, 558, 567, 1178, 1187, 1191, 1198). The ALJ further cited evidence that plaintiff's symptoms improved with treatment, with plaintiff reporting up to 90% relief of pain and "marked improvement" with treatment.[3] (Tr. at 672, citing Tr. at 501, 507, 534, 1162, 1173,

---

[3]The record contains numerous additional references to 80% relief (Tr. at 522, 1206, 1244, 1246, 1253, 1296, 1306, 1382, 1400, 1425, 1436, 1461, 1480) and 85% relief (Tr. at 1407). On September 15, 2020, plaintiff reported "100% improvement in her pain for over 2 years." (Tr. at 1496.)

17

1206, 1390.)  Regarding plaintiff's carpal tunnel syndrome, the ALJ noted that following her release surgery in 2013, EMG testing was "completely within normal limits," and she demonstrated normal strength and motion of the wrists and digits.  (Tr. at 672, citing Tr. at 466-78.)

Finally, the ALJ partially credited the opinions of the agency consultants, accepting Dr. Chan's limitation to sedentary work and Dr. Shaw's manipulative limitations.  (Tr. at 673.)  On consideration of the entire record, including the later-acquired evidence and plaintiff's hearing testimony, the ALJ adopted a more restrictive RFC than either consultant suggested.  See Burmester v. Berryhill, 920 F.3d 507, 510 (7th Cir. 2019) ("This finding was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence Burmester presented.").  Plaintiff does not challenge the ALJ's evaluation of the agency consultants' opinions.

Plaintiff alleged greater limitations, but for a number of reasons, including the relatively mild objective findings, normal examination results, her improvement with treatment, and her daily activities, the ALJ found that the record failed to fully substantiate plaintiff's claims of disabling symptoms.  (Tr. at 672.)  While plaintiff argues the ALJ failed to consider her variable functioning (as discussed above) and erred in discussing her improvement with treatment (as discussed below), she mounts no challenge to the ALJ's overall credibility finding, which cannot be deemed "patently wrong."  See Deborah M., 994 F.3d at 789; see also Halsell v. Astrue, 357 Fed. Appx. 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as enough of them are, and here the ALJ cited other sound reasons for disbelieving Halsell.") (internal citations omitted).

18

**C.  Limitations from Chiari Malformation and Headaches**

Plaintiff notes that the ALJ found her Chiari malformation and migraines to be severe impairments, yet he included no related limitations in the RFC.  (Pl.'s Br. at 23.)  As courts have noted, "that a condition often causes certain symptoms does not mean that a given claimant with that condition suffers from those symptoms, much less that her symptoms are of disabling severity."  Stobbe v. Kijakazi, No. 20-C-777, 2021 U.S. Dist. LEXIS 148493, at *70 (E.D. Wis. Aug. 9, 2021) (citing Schmidt v. Barnhart, 395 F.3d 737, 746 (7th Cir. 2005); Vasquez v. Berryhill, No. 17-C-1763, 2018 U.S. Dist. LEXIS 240169, at *55 (E.D. Wis. Oct. 25, 2018)); see also Richards v. Berryhill, 743 Fed. Appx. 26, 30 (7th Cir. 2018) ("[P]ointing to various diagnoses and complaints and saying that they might hinder Richards is insufficient to establish the existence of a functional limitation."); Skinner v. Astrue, 478 F.3d 836, 845 (7th Cir. 2007) ("[T]he existence of these diagnoses and symptoms does not mean the ALJ was required to find that Skinner suffered disabling impairments.").  In social security litigation, it is the claimant's "burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work."  Weaver v. Berryhill, 746 Fed. Appx. 574, 579 (7th Cir. 2018).  Here, plaintiff fails to demonstrate that the ALJ overlooked significant evidence supporting additional limitations or that the record otherwise compelled the inclusion of greater limitations.  See Gedatus v. Saul, 994 F.3d 893, 900-01 (7th Cir. 2021).

Plaintiff cites records from her visits with a neurologist in 2014, in which she complained of headaches for the past five years, with associated phonophotophobia.  (Pl.'s Br. at 23, citing Tr. at 553.)  In February 2014, she reported "stable chronic migraines occurring about every other day." (Tr. at 556.)  The neurologist increased her medication at that time (Tr. at 556), and

19

during a follow-up visit in July 2014 plaintiff reported that her headaches had "improved from every other day to a few times per month since" the increase. (Tr. at 558.) Plaintiff acknowledges the documented improvement but contends that headaches occurring a few times per month could still interfere with work. (Pl.'s Br. at 24.) She notes that her headaches are also documented in the records from Dr. Truong and the physical therapist who treated her back pain. (Pl.'s Br. at 24.) At the hearing, plaintiff testified that she experienced a headache once per week, lasting a day and a half to two days on average (but with some lasting six days). (Tr. at 704-05.) She further testified that in 2012 and 2013 she experienced seven or eight headaches per month. (Tr. at 714.) When she experienced a bad migraine, she stayed in bed in a dark, quiet room. (Tr. at 714, 718.)

Plaintiff lays out this evidence pertaining to her migraines, but she does not explain how it demonstrates error by the ALJ. She does not, for instance, contend that the ALJ ignored a line of evidence contrary to his conclusions. The ALJ discussed some of this evidence, including plaintiff's reports of phonophotophobia (Tr. at 671), her related neurological exams, and her reported improvement with treatment (Tr. at 672). Nor does plaintiff show that the evidence she cites compels the inclusion of additional limitations, such as work absences. See Taylor v. Kijakazi, No. 21-1458, 2021 U.S. App. LEXIS 37992, at *6 (7th Cir. Dec. 22, 2021) ("We have identified no material evidence overlooked or otherwise disregarded. And we see nothing compelling a finding that Taylor requires greater functional limitations than those determined by the ALJ.").

Plaintiff cites Goins v. Colvin, 764 F.3d 677, 680 (7th Cir. 2014) in support of this argument (Pl.'s Br. at 23), but a complete quotation of the passage upon which she relies shows the case is distinguishable:

20

> Furthermore, in disbelieving that the plaintiff has migraine headaches, the administrative law judge overlooked the fact that a Chiari I malformation, visible in the 2010 MRI but not the 1998 one, can cause severe headaches—indeed headaches are the "classic symptom of Chiari malformation." Mayo Clinic, "C h i a r i   M a l f o r m a t i o n :   S y m p t o m s ," www.mayoclinic.org/diseases-conditions/chiari-malformation/basics/symptoms /con-20031115 (visited Aug. 9, 2014).

Here, the ALJ accepted that plaintiff experienced severe headaches (Tr. at 668), for which she received treatment (Tr. at 671), and he cited the MRI documenting her Chiari malformation (Tr. at 670). The ALJ also considered and partially credited the reports of the agency physicians (Tr. at 673), who reviewed this evidence and factored it into their opinions (Tr. at 111, 113, 128).

## D.     Cervical Spine Limitations

Plaintiff also complains that cervical spine limitations were not included in the RFC. (Pl.'s Br. at 24.) Plaintiff notes that she has degenerative disc disease of the cervical spine, demonstrated on MRI, for which she received injections and ablation treatment; Dr. Truong described her cervical range of motion as painful and, at times, restricted; and at the hearing plaintiff testified that she rarely drove due to difficulty turning her head. (Pl.'s Br. at 24-25.) The ALJ cited plaintiff's "normal cervical range of motion" in support of his credibility finding, but plaintiff contends that painful motion is not normal, and the ALJ failed to acknowledge several findings of restricted motion. Finally, plaintiff notes that Dr. Truong opined that she could occasionally look down, turn her head, or hold her head in a static position, restrictions the VE said would likely preclude sedentary, unskilled work. (Pl.'s Br. at 25.)

The ALJ did not overlook this issue either. He acknowledged that plaintiff suffered from cervical degenerative disc disease, documented on MRI (Tr. at 670), for which she received treatment including injections, therapy, and medications (Tr. at 671). He further acknowledged

21

that plaintiff alleged neck pain, which limited activities including driving. (Tr. at 670.) He partially accepted plaintiff's allegations, limiting her to sedentary work with frequent (not constant) reaching. (Tr. at 671.) However, he rejected her claim of disabling limitations, citing the mild diagnostic results (Tr. at 670-71), normal exam findings, her improvement with treatment, and her (admittedly rather limited) daily activities (Tr. at 672-73). He also partially credited the reports of the agency consultants. Plaintiff fails to establish that the record compelled the ALJ to include even greater limitations related to this condition.

Plaintiff cites a few instances in which Dr. Truong noted limited cervical range of motion, and others in which he noted painful motion. However, she does not dispute that her range of motion was often normal. This is not a case in which the ALJ cherry picked a handful of normal findings, ignoring significant contrary evidence; the ALJ specifically noted that during some exams plaintiff demonstrated "pain with motion." (Tr. at 671.) The court need not remand simply because the ALJ failed to discuss every piece of evidence favorable to the claimant. See Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) (internal citations omitted):

> An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. But an ALJ need not mention every piece of evidence, so long he builds a logical bridge from the evidence to his conclusion.

See also Rodriguez v. Saul, No. 18-C-1875, 2020 U.S. Dist. LEXIS 99834, at *20 (E.D. Wis. June 8, 2020) (internal quote marks omitted):

> Plaintiff argues that this and other evidence can be interpreted in a way more favorable to his position. But it is not true that the ALJ ignored an entire line of evidence or distorted the record. Plaintiff's argument to the contrary is really an argument that the court should reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner, which it cannot do.

22

Finally, the ALJ provided good reasons for discounting Dr. Truong's opinions, as discussed below.

### E.     Improvement with Treatment

Plaintiff takes issue with the ALJ's finding that her symptoms improved with treatment. (Pl.'s 25-26.) She contends that the issue is not whether treatment helped (otherwise, why get it?), but rather whether the treatment made her well enough to return to work. (Pl.'s Br. at 26.) Plaintiff contends that the ALJ cited no evidence of significant improvement in her condition before the 12-month duration requirement was met; after that, she says, the record shows ups and downs but not improvement so significant she could return to work. Plaintiff argues that the ALJ cherry picked a single note documenting "marked improvement." (Pl.'s Br. at 26-27, citing Tr. at 1206.) She acknowledges the ALJ also cited references to "90% relief," which can be found numerous times in the record, but she contends the notes are ambiguous as to how long the relief lasted. (Pl.'s Br. at 27.) The ALJ stated that the "improvement is not always long lasting," but "she has continued to manage and/or improve her symptoms with her current treatments." (Tr. at 672.) Plaintiff complains that the ALJ cited no specific record evidence in support of this finding and contends that his suggestion of steady improvement is unsupported. (Pl.'s Br. at 27.) Plaintiff also contends that the ALJ erred by relying on her testimony that treatments "work to an extent" and her pre-hearing brief admitting she got somewhat better with treatment from Dr. Truong (but not so much so that she could sustain work). (Pl.'s Br. at 28, citing Tr. at 702, 940.) She concludes: "Could it be that it is the ALJ's position that any improvement whatsoever makes a claimant not disabled?" (Pl.'s Br. at 28.)

First, it was plaintiff's "burden, not the ALJ's, to prove that she was disabled." <u>Summers v. Berryhill</u>, 864 F.3d 523, 527 (7th Cir. 2017); <u>see also</u> <u>Tennant v. Astrue</u>, No. 11-C-0495,

23

2012 U.S. Dist. LEXIS 141435, at *6 (E.D. Wis. Sept. 28, 2012) ("On appeal, Tennant misunderstands the burden of proof. He asks the Commissioner to provide evidence that he is not disabled, but the burden has always been his to show disability."). Nor was this a closed period or disability review case, in which the ALJ had to make a finding of "medical improvement" permitting the claimant to return to work. See Tumminaro v. Astrue, 671 F.3d 629, 633 (7th Cir. 2011). Rather, the ALJ considered the effectiveness of plaintiff's treatment in evaluating the credibility of her statements and the weight to be afforded the medical opinions, as the regulations required him to do. See SSR 16-3p, 2016 SSR LEXIS 4, at *19; 20 C.F.R. § 404.1529(c)(3); see also 20 C.F.R. § 404.1527(c).[4]

Second, the ALJ fairly considered the record in making this finding. As plaintiff admits, the ALJ acknowledged that her pain relief was not always long lasting; he made no finding that treatment completely eliminated her pain. He crafted a highly restrictive RFC, limiting her to jobs in which she could remain seated most of the day, would never have to lift more than 10 pounds, and with limited reaching requirements. While plaintiff contends the ALJ cherry picked one note documenting "marked improvement" (defined in that note as greater than 50%) (Tr. at 1206), the ALJ also cited exhibits containing numerous references to 80-90% relief (Tr. at 501, 507, 522, 534, 1173, 1244, 1246, 1253, 1382, 1390, 1400, 1407, 1425). Plaintiff disagrees with the ALJ's conclusion that with treatment she could sustain the limited range of sedentary work set forth in the RFC, but a reviewing court is not permitted to substitute its judgment for that of the ALJ. See Elder, 529 F.3d at 413 ("[O]ur role is extremely limited. We

---

[4]In reply, plaintiff contends that this not a case about medical improvement. (Pl.'s Rep. Br. at 1.) However, her main brief, which contests "the implication that treatment restored [her] ability to work" (Pl.'s Br. at 25; see also Pl.'s Br. at 27, "the record does not support improvement so significant that Ms. Cotton is no longer disabled"), reads that way.

24

are not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations."); see also Kolar v. Berryhill, 695 Fed. Appx. 161, 162 (7th Cir. 2017):

> Her ability to work depends on just how much chronic pain she suffers from. Since pain is subjective and affects people in different ways, it is difficult to determine how much pain is present and how great its effects are. . . . Almost any conclusion an ALJ reaches in such situations may be inconsistent with some evidence in the record and consistent with other evidence. This is where the substantial-evidence standard of review matters.

Finally, nothing in the decision suggests that the ALJ believed any degree of improvement meant plaintiff was not disabled. And as the Commissioner notes, nothing in the regulations prohibited the ALJ from considering even temporary improvement with treatment. (Def.'s Br. at 14.)

## F.    Dr. Truong's Opinions

Plaintiff argues that the ALJ failed to provide good reasons for discounting the opinions from her treating physical medicine specialist, Dr. Truong. (Pl.'s Br. at 28.) Under the regulation applicable to this claim, the agency generally gives more weight to medical opinions from treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone. 20 C.F.R. § 404.1527(c)(2). If a treating source's medical opinion on the nature and severity of the claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the agency will give it "controlling weight." Id. If the opinion is not given controlling weight, the agency will determine how much weight it should receive,

25

considering the nature and extent of the treatment relationship, supportability, consistency, and specialization.  Id. § 404.1527(c)(1)-(5).  "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."  Id. § 404.1527(c)(2).

The Seventh Circuit has nevertheless recognized that, "while the treating physician's opinion is important, it is not the final word on a claimant's disability."  Schmidt v. Astrue, 496 F.3d 833, 842 (7th Cir. 2007) (internal quote marks omitted).  The ALJ may discount a treating source's opinion if it is internally inconsistent, rests entirely on the claimant's subjective complaints, lacks support in the provider's own treatment notes, or conflicts with the opinions of other physicians.  E.g., Loveless v. Colvin, 810 F.3d 502, 507 (7th Cir. 2016); Henke v. Astrue, 498 Fed. Appx. 636, 640 (7th Cir. 2012); Ketelboeter v. Astrue, 550 F.3d 620, 625 (7th Cir. 2008).  If the ALJ discounts a treating source opinion after considering the regulatory factors, the reviewing court "must allow that decision to stand so long as the ALJ minimally articulated his reasons."  Elder, 529 F.3d at 415 (internal quote marks, citation, and alteration omitted); see also Stepp v. Colvin, 795 F.3d 711, 718 (7th Cir. 2015) ("We uphold all but the most patently erroneous reasons for discounting a treating physician's assessment.") (internal quote marks omitted).

As indicated above, the ALJ considered Dr. Truong's various opinions, including his August 2013 prescription for a cane (Tr. at 942), his June 2014 notation that plaintiff could not type at work (Tr. 503), his May 2015 report limiting plaintiff to sedentary work with significant manipulative limitations (Tr. at 479-82), his August 2015 letter clarifying the reaching limitation and removing the typing limitation (Tr. at 593), his March 2019 report limiting plaintiff to less than full-time work (Tr. at 1078-82), and his September 2019 report again limiting plaintiff to

26

less than full-time work (Tr. at 1084-88). The ALJ acknowledged Dr. Truong as a treating source who had a lengthy relationship with plaintiff, but he discounted the opinions as extreme and inconsistent with the overall evidence, including Dr. Truong's own exam findings and plaintiff's reports of improvement. The ALJ further found significant that Dr. Truong imposed a typing restriction but then removed it after the June 2014 EMG was normal, which suggested he was relying on subjective rather than objective evidence to reach his initial conclusion; the doctor then added back in fingering restrictions years later with no explanation of the evidence used to support this limitation. And Dr. Truong prescribed a cane in 2013 but in subsequent reports opined that plaintiff did not need an assistive device, which suggested improvement. (Tr. at 674.)

Plaintiff contends that, while the ALJ found Dr. Truong's opinions extreme when compared to the overall evidence, he did not explain in what way the opinions were extreme. She argues that the conclusion was apparently based on the ALJ's own interpretation of the objective medical evidence. "As such, the ALJ is playing doctor." (Pl.'s Br. at 28.)

The regulations required the ALJ to evaluate the consistency of Dr. Truong's opinions with the other evidence of record. See 20 C.F.R. § 404.1527(c)(5) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). And as the Seventh Circuit has noted, an ALJ does "not err or improperly 'play doctor' by examining the medical record and determining that [a treating source's] conclusions were unsupported by his own notes or contradicted by other medical evidence." Henke, 498 Fed. Appx. at 640; see also Depner v. Saul, No. 20-CV-401, 2021 U.S. Dist. LEXIS 145683, at *10-11 (E.D. Wis. Aug. 4, 2021) (holding that an ALJ does not play doctor by crediting a source's own "normal" examination findings).

Plaintiff also faults the ALJ for relying on her own reports of improvement. (Pl.'s Br. at 29.) For the reasons stated in § E. above, the ALJ reasonably relied on this evidence as part of his analysis. The ALJ also reasonably relied on the various findings of "normal cervical range of motion" (Pl.'s Br. at 29), for the reasons discussed in § D. above.

Plaintiff further argues that, once one recognizes her statements do not contradict Dr. Truong's opinion, it is apparent that the ALJ's decision relies solely on objective evidence. (Pl.'s Br. at 29.) Plaintiff cites 20 C.F.R. § 404.1529(c)(2) in support of this argument, but that regulation applies to the evaluation of symptoms, not opinion evidence. As indicated above, under the applicable regulation, the ALJ was required to determine whether the opinions were well-supported by medically acceptable clinical and laboratory diagnostic techniques, 20 C.F.R. § 404.1527(c)(2), supported by medical signs and laboratory findings, id. § 404.1527(c)(3), and consistent with the record as a whole, id. § 404.1527(c)(4). The ALJ cited a number of factors in evaluating Dr. Truong's opinions, in addition to the objective medical evidence, including inconsistency with the treatment notes and lack of supporting explanation.

Plaintiff next contends that the ALJ's "argument about the cane is silly." (Pl.'s Br. at 29, citing Tr. at 674.) "It is clear from context that Ms. Cotton generally requires a cane only during exacerbations." (Pl.'s Br. at 29, citing Tr. at 488, 493, 1470, 1477.) Dr. Truong never said that, nor do the cited records clearly support this contention. As the Commissioner notes, in his May 2015, March 2019, and September 2019 opinions, Dr. Truong indicated that plaintiff did not need an assistive device and provided no further explanation. (Def.'s Br. at 20, citing Tr. at 481, 1081, 1087.)

In reply, plaintiff discounts the issue, stating: "This is not a case about whether Ms. Cotton needs a cane for even occasional standing and walking. Ms. Cotton has never claimed

that she did, R. 65, 345, 801-802, and neither did her doctor. R. 481." (Pl.'s Rep. Br. at 2.) Given Dr. Truong's prescription for a cane (Tr. at 488, 942) and plaintiff's statements that she used one for ambulation (Tr. at 64-65, 345), it was incumbent upon the ALJ to analyze the issue (see Tr. at 672).

Finally, plaintiff argues that the ALJ was grasping at straws to try to use Dr. Truong's typing and fingering restrictions as grounds for assigning little weight to his overall opinion. Plaintiff admits that the doctor relied on subjective rather than objective evidence to reach his initial conclusion, but she argues that "this is exactly what a long-term treating physician is supposed to do." (Pl.'s Br. at 30, citing 20 C.F.R. § 404.1527(c)(2).) The cited regulation acknowledges that a treating source "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone," but nothing in the regulation suggests that an ALJ must accept a treating source report based on subjective statements alone. And it is well-settled in this circuit that "medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to [a] citation of a claimant's subjective complaints." Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004).

As with the cane, in reply plaintiff seeks to discount the fingering issue, stating: "This is not a case about whether Ms. Cotton has typing restrictions. She doesn't, according to Dr. Truong. R. 593." (Pl.'s Rep. Br. at 2.) But given plaintiff's reports of difficulty using her hands (Tr. at 670, citing Tr. at 273), it was also incumbent upon the ALJ to consider related manipulative limitations. Moreover, the ALJ cited Dr. Truong's initial typing restriction as an example of inconsistency and uncritical acceptance of subjective statements. Dr. Truong imposed a typing limitation, removed it when EMG testing came back normal, but "then added back in fingering restrictions years later with no explanation of the evidence used to support

29

this limitation." (Tr. at 674.) Plaintiff contends that Dr. Truong's opinions are consistent with each other and with the record as a whole (Pl.'s Rep. Br. at 3), but she does not meaningfully dispute the ALJ's point. Indeed, she admits that "the ALJ may be right that Dr. Truong's opinion about handling and fingering was not explained." (Pl.'s Rep. Br. at 3.) She states that the handling and fingering limitations arise from carpal tunnel syndrome, a condition Dr. Truong was not involved in treating (Pl.'s Rep. Br. at 3), but that is no answer. See 20 C.F.R. § 404.1527(c)(2)(ii) ("[I]f your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her medical opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain.").

Plaintiff argues that Dr. Truong's opinion about reaching was well-explained, and thus "the ALJ was completely wrong when he lumped together as unexplained Dr. Truong's opinions about reaching, handling and fingering." (Pl.'s Rep. Br. at 4.) But that is not what the ALJ did; he criticized only the fingering limitation as lacking explanation. (Tr. at 674 ¶ 3.) Earlier in his decision, the ALJ acknowledged Dr. Truong's explanation that the reaching limitation related to plaintiff's cervical condition and the concern that reaching would cause hyperextension of her neck. (Tr. at 674 ¶ 1.) Quoting the third paragraph of the ALJ's discussion, plaintiff contends that the "explanation makes little sense. About all that can be said about the ALJ's explanation is that he is relying on objective evidence while ignoring the other valuable information provided by Dr. Truong about the degree of Ms. Cotton's pain." (Pl.'s Rep. Br. at 4.) As discussed, the ALJ provided a number of "good reasons" for discounting these opinions, including the lack of support in Dr. Truong's own treatment notes, plaintiff's own reports of improvement, reliance on plaintiff's subjective statements, internal inconsistency, and lack of

30

supporting explanation. Plaintiff contends that Dr. Truong did not ignore her partial improvement (Pl.'s Rep. Br. at 4-5), but the ALJ could reasonably conclude that the evidence of improvement undercut the severe limitations contained in Dr. Truong's opinions.

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is affirmed, and this case is dismissed. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of May, 2022.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge